**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION**

| | |
|---|---|
| **ARCH INSURANCE COMPANY,** § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | |
| § | |
| **TRANSWOOD CARRIERS, INC. and** § | CASE NO. _____ |
| **EP ENERGY E&P COMPANY, LP,** § | |
| **n/k/a EP ENERGY E&P COMPANY,** § | |
| **LLC, FTS INTERNATIONAL, INC.,** § | |
| **FTS INTERNATIONAL SERVICES,** § | |
| **LLC, and J&R VALLEY OILFIELD** § | |
| **SERVICES, INC.,** § | |
| § | |
| *Defendants*. § | |

**PLAINTIFF ARCH INSURANCE COMPANY'S
ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT**

In this insurance coverage case, Plaintiff ARCH INSURANCE COMPANY **("Arch")** seeks a declaratory judgment under 28 U.S.C. §§2201-2202 regarding its defense obligation, if any, to EP Energy E&P Company, LP, now known as EP Energy E&P Company, LLC **("EP")**, FTS International, Inc. and FTS International Services, LLC (collectively, "**FTS**"), J&R Valley Oilfield Services, Inc. **("J&R")**, and Arch's named insured, Transwood Carriers, Inc. **("Transwood"),** under a commercial general liability insurance policy where the underlying personal injury suit against EP, FTS, J&R (collectively, "**EP Group**") and Transwood was resolved years ago.

**Parties**

1.  Plaintiff **Arch Insurance Company** is a property and casualty insurance company incorporated in the state of Missouri, with a principal place of business in Jersey City, New Jersey.

Page 1

2. Defendant **Transwood Carriers, Inc**. is a Nebraska corporation with a principal place of business in Omaha, Nebraska. Transwood can be served through its registered agent for service of process, Brian K. Wood, 2565 St. Mary's Avenue, Omaha, Nebraska 68105.

3. Defendant **EP Energy E&P Company, LP** was a Delaware-formed limited partnership with a former principal place of business in Wilmington, Delaware. In 2022, it converted to a Texas limited liability company called **EP Energy E&P Company, LLC**. Its current principal place of business is at 945 Bunker Hill Road, Suite 1300, Houston, Texas 77024. EP may be served through its registered agent for service of process, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

4. Defendant **FTS International, Inc**. is a Delaware corporation with a principal place of business at 333 Shops Boulevard, Suite 301, Willow Park, Texas 76087. FTS International, Inc. may be served through its registered agent for service of process, Capitol Corporate Services, Inc., 1501 S. MoPac Expressway, Suite 220, Austin, Texas 78746.

5. Defendant **FTS International Services, LLC** is a Texas limited liability company with a principal place of business at 333 Shops Boulevard, Suite 301, Willow Park, Texas 76087. FTS International Services, LLC may be served through its registered agent for service of process, Capitol Corporate Services, Inc., 1501 S. MoPac Expressway, Suite 220, Austin, Texas 78746.

6. Defendant **J&R Valley Oilfield Services, Inc**. is a Texas corporation with a principal place of business in Mission, Texas. J&R Valley Oilfield Services, Inc. may be served through its registered agent, Jose Manuel Flores, at 8100 N. Moorefield Road, Mission, Texas 78574. Alternatively, J&R may be served through its President, Jose Manuel Flores, or its Vice President, Diana I. Flores, located at 8100 N. Moorefield Road, Mission, Texas 78574.

**Jurisdiction**

7. This Court has subject matter jurisdiction over this dispute under 28 U.S.C. §1332(a) because complete diversity of citizenship exists between Plaintiff and all Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Arch is incorporated in Missouri and its principal place of business is 210 Hudson Street, Suite 300, Jersey City, New Jersey 07311. For diversity of citizenship jurisdiction purposes, Arch is a citizen of Missouri and New Jersey.

9. Transwood is incorporated in Nebraska and its principal place of business is 2565 St. Mary's Avenue, Omaha, Nebraska 68105. For diversity of citizenship jurisdiction purposes, Transwood is a Nebraska citizen.

10. EP was formed as a Delaware limited partnership but has converted to a Texas limited liability company with a principal place of business at 945 Bunker Hill Road, Suite 1300, Houston, Texas 77024. According to public records, EP is 100% owned and managed by Verdun Oil Company II LLC, which is a Delaware limited liability company with a principal place of business at 55 Waugh Drive, Suite 400, Houston, Texas 77007. Upon information and belief according to available public records, all owners, members and managers of Verdun Oil Company II LLC are citizens of either Texas or Delaware with principal places of business in either Texas or Delaware, and none are citizens of Missouri or New Jersey. Upon information and belief, all of EP's owners, members and managers are citizens of either Delaware or Texas with principal places of business in either Delaware or Texas, and none are citizens of either Missouri or New Jersey. For diversity of citizenship purposes, EP is a citizen of Delaware and Texas.

11. FTS International, Inc. is a Delaware corporation with a principal place of business at 333 Shops Boulevard, Suite 301, Willow Park, Texas 76087. For diversity of citizenship purposes, it is a citizen of Delaware and Texas.

12. FTS International Services, LLC is a Texas limited liability company with a principal place of business at 333 Shops Boulevard, Suite 301, Willow Park, Texas 76087. Upon information and belief, according to available public records, it is 100% owned by FTS International, Inc., which is a Delaware corporation with a principal place of business in Texas. For diversity of citizenship purposes, FTS International Services, LLC is a citizen of Texas and Delaware.

13. J&R is a Texas corporation with a principal place of business at 8100 N. Moorefield Road, Mission, Texas 78574. For purposes of diversity of citizenship, J&R is a Texas citizen.

14. The Arch commercial general liability insurance policy that forms the basis of this declaratory judgment suit has a limit of $1,000,000.00 per occurrence and $2,000,000 in the aggregate. EP Group's demands against Transwood and Arch, for which they seek insurance policy benefits, are alleged to be $196,314.71, as of May 16, 2024. Therefore, the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

15. This Court can exercise personal jurisdiction over all Defendants because this declaratory judgment suit arises out of an underlying personal injury incident and lawsuit brought by Beverly Allen ("**Allen**") that took place on January 4, 2016 at the Ritchie Farms well site located near County Road 468 in La Salle County, Texas (the "**Well Site**"). Allen sued EP Group and Transwood in the 218th Judicial District Court of LaSalle County, Texas for alleged injuries she claimed when she slipped and fell at the Well Site. EP Group and Transwood allegedly were owners, operators, or contractors conducting and furthering ongoing oil and gas fracking

operations at the Well Site at the time of Allen's incident. The insurance policy benefits EP Group seeks from Arch arise out of and relate to Allen's incident and lawsuit. Transwood and its affiliates maintain business offices and regularly conduct business out of those offices in Baytown and San Antonio, Texas. EP maintains its principal place of business in Houston, Texas and regularly conducts business out of that office. The FTS entities regularly conduct business in Texas and maintain principal places of business in Willow Park, Texas. J&R regularly conducts business in Texas and maintains its principal place of business in Mission, Texas. Accordingly, both general and specific contacts with Texas exist as to each Defendant, making this Court's exercise of jurisdiction over each of them appropriate.

## Venue

16.     Venue is proper in the United States District Court for the Southern District of Texas, Laredo Division because the underlying lawsuit out of which this coverage action arises took place and is pending in state district court in Cotulla, LaSalle County, Texas. Therefore, a substantial part of the events or omissions giving rise to this declaratory judgment suit occurred within this district and division, and any final judgment for which payment might be sought will arise out of LaSalle County, Texas. 28 U.S.C. §1391(b)(2). The underlying personal injury incident out of which this coverage action arises took place at the Well Site near County Road FM 468 in LaSalle County, Texas, within this district and division. 28 U.S.C. §1391(b)(2).

## Facts

*The Allen Lawsuit*.

17.     Allen claimed she was injured on January 4, 2016 at the Well Site when she slipped and fell on mud while delivering fracking sand to the Well Site. She originally filed a lawsuit related to this incident on April 28, 2017 and amended her petition several times to ultimately

include EP, Transwood, FTS, and J&R as Defendants. Allen's lawsuit was filed as Cause No. 17-04-00078CVL in the 218th Judicial District Court of LaSalle County, Texas, styled *Beverly Allen v. FTS International, Inc., et al.* (the "**Allen Lawsuit**").

18.     In the Allen Lawsuit, EP Group filed cross-claims against Transwood (the "**Cross-Claims**") in which EP Group claimed that Transwood owed them contractual indemnity under a certain November 1, 2012 Master Service Agreement between EP and Transwood (the "**MSA**") for Allen's personal injury claims. In the Cross-Claims, EP Group also claimed that Transwood was required to obtain additional insured coverage benefiting EP Group under Transwood's general liability insurance policies. As damages under their Cross-Claims, EP Group sought payment for defense costs and expenses associated with their defense to the Allen Lawsuit and any judgment or settlement associated with Allen's claims in the Allen Lawsuit.

19.     Effective on or about April 10, 2019, Allen settled all of her claims against all Defendants in the Allen Lawsuit, including EP Group and Transwood (the "**Allen Settlement**"). Under the Allen Settlement and in exchange for payment of a confidential sum of money to her, Allen fully, finally and generally released all of her claims related to the January 4, 2016 incident that she had or could have been asserted against EP Group and Transwood. Arch paid for the Allen Settlement. Allen's claims against all Defendants in the Allen Lawsuit, including those against EP Group and Transwood, were dismissed with prejudice in 2021.

20.     Despite the resolution and dismissal with prejudice of Allen's claims against EP Group and Transwood, EP Group and Transwood have continued to fight, in several different courtroom venues, over their respective obligations (if any) to each other under the MSA. Via order dated April 25, 2019 entered in the Allen Lawsuit, Transwood was ordered to pay EP Group $78,243.24 in attorneys' fees and costs. That amount has been paid. Via order dated June 28, 2019

in the Allen Lawsuit, Transwood was ordered to pay EP Group an additional $8,800.00 in attorneys' fees and costs. That amount has also been paid. Accordingly, as far as Arch is aware, any defense costs and expenses incurred by EP Group up to and including the April 10, 2019 Allen Settlement, as well as the Allen Settlement monies, have been fully paid.

### *The Arch Policy*.

21. Arch issued a Commercial General Liability Insurance Policy number ZAGLB3002700 to Transwood as the named insured for the July 1, 2015 to July 1, 2016 policy period (the "**Arch Policy**"). A true copy of the Arch Policy is attached as *Exhibit A* and is incorporated by reference into this Complaint. The Arch Policy is subject to a $1,000,000 per occurrence limit for "Bodily Injury and Property Damage Liability", and a $2,000,000 general aggregate. EP Group are not named insureds under the Arch Policy.

22. The Arch Policy generally uses the ISO CG 00 01 04 13 "Commercial General Liability Coverage" form (the "**CGL Coverage Part**"), as modified by other endorsements. The Arch Policy's "Section I – Coverages, Coverage A – Bodily Injury and Property Damage Liability" insuring agreement is set forth in the "Contractors Prior Injury Or Damage Endorsement" (00 GL0669 00 08 11), which modifies the CGL Coverage Part and reads in part:

> **COMMERCIAL GENERAL LIABILITY COVERAGE FORM**
> \*\*\*
> **SECTION I – COVERAGES**
>
> **COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**
>
> **1. Insuring Agreement**
>
>  **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

> **(1)** The amount we will pay for damages is limited as described in **Section III**– Limits of Insurance; and
>
> **(2)** Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** and **B** or medical expenses under Coverage **C**.
>
> No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages **A** and **B**.

\*\*\*

23. The Arch Policy also incorporates the following exclusion that applies to the above "Section I, Coverage A" insuring agreement:

> **2. Exclusions**
>
> This insurance does not apply to:
> \*\*\*
>
> **b. Contractual Liability**
>
> "Bodily injury" … for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
>
> > **(1)** That the insured would have in the absence of the contract or agreement; or
> >
> > **(2)** Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury"… occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury"…, provided:
> >
> > > **(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
> > >
> > > **(b)** Such attorneys' fees and litigation expenses are for the defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\*\*\*

24. The Arch Policy defines "insured contract" in relevant part:

> "Insured contract" means:
> \*\*\*
> **f.** That part of any other contract or agreement pertaining to your business…under which you assume the tort liability of another party to pay for "bodily injury"… to a third person or organization, Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

\*\*\*

Page 8

25. The Arch Policy also includes two "additional insured" endorsements:

- "Additional Insured – Owners, Lessees or Contractors – Completed Operations" endorsement (CG 20 37 04 13) (the **"Completed Operations Endorsement"**); and

- "Blanket Additional Insured" endorsement (00 GL0596 00 04 10) (the "**Blanket AI Endorsement**").

26. The Completed Operations Endorsement provides:

**ADDITIONAL INSURED – OWNERS, LESSESS OR
CONTRACTORS – COMPLETED OPERATIONS**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART

**SCHEDULE**

| Name Of Additional Insured Person(s) Or Organization(s) | Location And Description Of Completed Operations |
|---|---|
| ANY PERSON/ORGANIZATION WHOM YOU HAVE AGREED IN A WRITTEN CONTRACT, EXECUTED PRIOR TO LOSS TO NAME AS ADDITIONAL INS. PER CERTIFICATES OF INSURANCE ON FILE WITH MARSH USA, INC. | ALL WORK PERFORMED AT ALL LOCATIONS OF ADDITIONAL INSURED'S. |
| | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. ||

**A.** **Section II – Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused in whole or in part, by "your work" at the location designated and described in the Schedule of this endorsement performed for that additional insured and included in the "products-completed operations hazard".

However:

**1.** The insurance afforded to such additional insured only applies to the extent permitted by law; and

**2.** If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the followed is added to **Section III – Limits Of Insurance**:

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

**1.** Required by the contract or agreement; or
**2.** Available under the applicable Limits of Insurance shown in the Declarations;

whichever is less.

This endorsement shall not increase the applicable Limits of Insurance shown in the Declarations.

\*\*\*

27. The Blanket AI Endorsement provides:

**BLANKET ADDITIONAL INSURED**

This endorsement modifies insurance provided under the following:

>COMMERCIAL GENERAL LIABILITY COVERAGE FORM
>LIQUOR LIABILITY COVERAGE FORM
>PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE FORM

**SECTION II – WHO IS AN INSURED** is amended to include as an additional insured the person or organization who is required under a written contract with you to be included as an insured under the policy, but only with respect to liability arising out of your operations or premises owned by or rented to you.

\*\*\*

28. If Transwood owes an enforceable contractual indemnity obligation to EP Group under the MSA, coverage to Transwood for such obligation is subject to the Arch Policy's "Insuring Agreement", the "Contractual Liability" exclusion, and the Arch Policy's definition of "insured contract".

29. To the extent that EP Group demonstrates that they qualify as "Scheduled" entities under the Arch Policy's Completed Operations Endorsement, any coverage to EP Group for claimed defense and indemnity costs and expenses associated with the Allen Lawsuit is defined and limited by the terms, provisions, and limitations of the Completed Operations Endorsement and the Arch Policy.

30. To the extent EP Group demonstrates that Transwood was required by a written contract with Transwood to include EP Group as additional insureds under the Arch Policy, the scope of any such coverage to EP Group is defined and limited by the terms, provisions, and limitations of the Blanket AI Endorsement and the Arch Policy.

31. Via letter dated May 16, 2024, EP Group demanded that Arch recognize EP Group as additional insureds under the Arch Policy. However, the Allen Lawsuit was settled over five

(5) years ago at no cost to EP Group, and the two referenced orders in the Allen Lawsuit requiring Transwood to pay EP Group's defense costs have been paid. Accordingly, Arch seeks a declaration that any obligation under the Arch Policy that Arch may owe or might have owed to either EP Group or Transwood with respect to the Allen Lawsuit has been satisfied. Alternatively, Arch seeks a declaration defining Arch's further obligation, if any, under the Arch Policy so that any such obligation can be discharged and the Cross-Actions in the Allen Lawsuit fully dismissed.

## Cause of Action: Declaratory Judgment

32. Arch incorporates each and all of paragraphs 1-31 as if fully repeated here.

33. An actual case or controversy exists between Arch, EP Group, and Transwood regarding what obligations, if any, Arch may owe with respect to the Allen Lawsuit following the Allen Settlement. 28 U.S.C. §§2201-2202. All conditions precedent to Arch's right to declaratory relief have been performed, have occurred, or are otherwise fully satisfied. Arch is entitled to a determination that it owes no obligation to defend or indemnify EP Group or Transwood with respect to the Allen Lawsuit, or that any such obligation has been satisfied. Alternatively, Arch seeks a declaration defining Arch's further obligation under the Arch Policy, if any, so that any such obligation can be addressed between all parties and discharged.

34. Any enforceable contractual indemnity obligation that Transwood may owe to EP Group under the MSA is not covered under the Arch Policy because such obligation is excluded by the Arch Policy's "Contractual Liability" exclusion as to which no exception applies, including but not limited to the "insured contract" exception to this exclusion. Alternatively, to the extent that EP Group's defense costs in the Allen Lawsuit are indemnifiable and covered under the Arch Policy, such defense costs and fees are not "Supplementary Payments" under the Arch Policy, but

instead are treated as damages that deplete the limit of insurance,[1] and Arch seeks a declaration to that effect. Arch further contends that some or all of the sums claimed are not defense costs or covered indemnity payments under the Arch Policy.

35. EP Group has no coverage as additional insureds under the Completed Operations Endorsement because EP Group's liability to Allen, if any, was not caused, in whole or in part, by Transwood's work at the Well Site and in any event, Transwood's work does not qualify as a "products-completed operations hazard" as this Endorsement requires. Arch affirmatively asserts all conditions, limitations, and definitions found within the Completed Operations Endorsement of the Arch Policy and seeks a declaration that the Completed Operations Endorsement does not apply. Arch further contends that some or all of the sums claimed are not defense costs or covered indemnity payments under the Arch Policy.

36. EP Group has no coverage as additional insureds under the Blanket AI Endorsement because EP Group's liability, if any, in the Allen Lawsuit did not arise out of Transwood's operations, or out of premises owned by or rented to Transwood, as this Endorsement requires. Arch further contends that some or all of the sums claimed are not defense costs or covered indemnity payments under the Arch Policy. Alternatively, in the event that the Blanket AI Endorsement does afford coverage to EP Group, Arch seeks a declaration defining Arch's further obligation under the Arch Policy, if any, so that any such obligation can be addressed between all parties and discharged.

37. Arch seeks final declaratory judgment that states:

(a) the Arch Policy affords no coverage for any enforceable contractual indemnity obligation Transwood might owe to EP Group relative to the Allen Lawsuit;

---

[1] Arch Policy, "Supplementary Payments – Coverages A and B", ¶2.

(b) alternatively, if the Arch Policy does afford coverage for any such enforceable contractual indemnity obligation, Arch seeks a declaration defining Arch's further obligation under the Arch Policy, if any, so that any such obligation can be addressed between all parties and discharged;

(c) the Arch Policy provides no coverage to EP Group as additional insureds with respect to the Allen Lawsuit;

(d) alternatively, if the Arch Policy does afford EP Group additional insured coverage, Arch seeks a declaration defining Arch's further obligation under the Arch Policy, if any, so that any such obligation can be addressed between all parties and discharged;

(e) Arch owes no further defense or indemnity obligation in the Allen Lawsuit under the Arch Policy;

(f) any coverage under the Arch Policy benefiting Transwood or EP Group is limited in breadth and scope, and to the policy limit amount(s) specified in the Arch Policy; and,

(g) Arch is entitled to all other relief that may be appropriate.

## **Prayer for Relief**

WHEREFORE, Plaintiff ARCH INSURANCE COMPANY prays that all Defendants be cited to appear and answer this suit, that Arch have all declaratory and other relief requested in this Complaint, that all costs of suit be taxed against the Defendants, and for all other relief to which Arch may be entitled.

**DATED:**  August 6, 2024

        Respectfully submitted,

        **LOCKE LORD LLP**

        */s/ Jill A. Schaar*
        Jill A. Schaar
         Texas Bar No.  17719870
         jschaar@lockelord.com
        Thanh Le
         Texas Bar No. 24097978
         thanh.le@lockelord.com
        600 Travis Street, Suite 2800
        Houston, Texas 77002
        T: (713) 226-1200
        F: (713) 223-3717

        **ATTORNEYS FOR PLAINTIFF**
        **ARCH INSURANCE COMPANY**